UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALYA PROHKOROVA,<br>    Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA,<br>    Defendant. | Civil Action No. 17-30064-MGM |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO
SUPPLEMENT THE RECORD
(Dkt. No. 16)

ROBERTSON, M.J.

This is an action brought by plaintiff Natalya Prohkorova ("Plaintiff") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recover long-term disability ("LTD") benefits allegedly wrongfully discontinued by the defendant, Unum Life Insurance Company of America ("Unum"). Plaintiff has moved to supplement the administrative record ("A.R.") by adding (1) six portions of Unum's Benefits Center Claims Manual ("Claims Manual"); (2) documents concerning Unum's quality compliance criteria (which Unum has not produced); and (3) vocational resource material. Unum opposes the motion. For the reasons that follow, Plaintiff's Motion to Supplement the Record is GRANTED in part and DENIED in part.

    I.    <u>The Claim</u>

At the onset of Plaintiff's disability, she was employed as a pediatrician.[1] She filed an LTD claim, an individual disability claim, and a life waiver of premium claim with a January 3,

---

[1] Pending a decision on Plaintiff's motion to supplement, the parties have not filed the administrative record with the court. This summary of the facts and Unum's basis for denying

2007 date for the onset of disability. She began receiving disability benefits based on her inability to perform the material and substantial functions of her job as a pediatrician based on a diagnosis of herniated nucleus polposus of the thoracic spine and thoracic radiculopathy (Dkt. No. 18-1 at 3). In July 2013, Unum obtained updated medical information from Plaintiff. According to the appeal decision, a December 4, 2015 thoracic MRI showed no finding of stenosis or nerve root compression that would be consistent with thoracic radiculopathy or local thoracic pain. Compared with a 2008 MRI, the size of the thoracic disk herniation had decreased to the point that, in a December 14, 2014 study, there was no longer any disc herniation seen (*id.* at 3-4). Unum referred Plaintiff for a psychiatric IME (independent medical examination) to assess the possibility that Plaintiff's complaints of chronic pain were psychiatric in nature. The IME did not result in the diagnosis of any psychiatric condition or a recommendation for any psychiatric or behavioral health care treatment (*id.* at 4). Unum concluded that Plaintiff was no longer disabled because test results did not support a disabling back condition, there was no psychiatric diagnosis, and her complaints of chronic disabling pain were inconsistent with objective test results (*id.*).

II. Legal Framework

The parties agree on the standard of review in this denial of benefits case. They agree that the LTD plan under which Plaintiff claims to be entitled to benefits "reserves discretion to the administrator [,Unum, so that] judicial review of the denial [of benefits] is limited to determining whether the administrator acted arbitrarily and capriciously." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 22 (1st Cir. 2003) (citing *Leahy v. Raytheon Co.*, 315 F.3d

---

Plaintiff's claim is drawn from Unum's appeal decision attached as Exhibit A to Unum's opposition to Plaintiff's motion to supplement (Dkt. No. 18-1).

11, 15 (1st Cir. 2002); *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 56-57 (1st Cir. 1999)). They further agree that Unum "both determines whether an employee is eligible for benefits under [the LTD plan] and pays those benefits out of its own pocket, [and that] 'this dual role creates a conflict of interest.'" *Wilson v. Pharmerica Corp. Long Term Disability Plan*, 102 F. Supp. 3d 373, 374 (D. Mass. 2015) (quoting *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)).² In *Glenn*, the United States Supreme Court held that when, as here, such a structural conflict exists, judges reviewing denial of benefits decisions "should weigh a conflict as they would any other pertinent factor; that is, when the relevant considerations are in equipoise, any one factor, including a structural conflict, may act as a tiebreaker." *Denmark v. Liberty Assurance Co. of Boston*, 566 F.3d 1, 8 (1st Cir. 2015) (citing *Glenn*, 554 U.S. at 116-17).

"ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator." *Id.* at 10. In *Denmark*, the First Circuit stated that "*Glenn* fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict. *See, e.g. Glenn*, [554 U.S. at 117]. . . . But any such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." *Id.* After a review of the documents at issue and Plaintiff's arguments for supplementation, the court concludes that the documents with which Plaintiff seeks to supplement the A.R. are not related to Unum's structural conflict. Plaintiff has not identified any "gap in the administrative record" related to Unum's "procedures used to prevent

---

² At the onset of Plaintiff's disability, she was also covered by an individual disability policy issued by Paul Revere Life Insurance Company, a subsidiary of Unum Group (Dkt. No. 18 at 1). Unum Group employees provided services on behalf of Unum and Paul Revere in the administration of Plaintiff's claims under the individual disability policy and the group LTD policy. The parties have agreed on portions of the individual disability claims file that should be added to the A.R. for purposes of reviewing Plaintiff's claims under the group LTD policy (Dkt. No. 17 at 3).

3

or mitigate the effect of structural conflicts," *id.*, that she seeks to address by supplementing the A.R.

Instead, for the most part, Plaintiff seeks to supplement the A.R. with internal documents from Unum, such as portions of its Claims Manual, which Plaintiff claims are analogous to an administrative agency's guidelines and regulations as a basis for challenging aspects of Unum's process in evaluating her claim (Dkt. No. 17 at 4). "The administrator's obligation to avoid arbitrary and capricious behavior extends to procedure as well as substance." *Liston*, 330 F.3d at 25 n.5 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981 (7th Cir. 1999)). In *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 122 (1st Cir. 2004), the First Circuit held that the plan administrator's internal documents "interpreting the language of the [p]lan and providing the standard for evaluation of the facts presented" should be considered as part of the administrative record in the benefits denial case before the court where those documents were relevant to the interpretation of the plan terms on the basis of which the plan administrator had denied benefits. *See id.* at 124, 126. Subsequently, the First Circuit addressed a claimant's contention that the district court should have provided the claimant with discovery to determine whether the claims staff and medical reviewers followed procedure and were properly educated and trained. The First Circuit affirmed the district court's denial of the requested discovery on the ground that "[t]here was no serious claim of bias or procedural misconduct toward [the claimant] . . . and that 'at least some very good reason [wa]s needed to overcome the strong presumption that the record on review is limited to the record before the administrator.'" *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005) (quoting *Liston*, 330 F.3d at 23). "The weight and admissibility of internal documents, whether those documents are offered in support of the interpretation of the plan administrator or that of the

4

claimant, will vary with the facts of each case." *Glista*, 378 F.3d at 123. The question after *Glista* and *Orndorf* is whether, with respect to the specific materials Plaintiff has identified, she has shown some very good reason in the context of this case to overcome the strong presumption against supplementing the record on which the plan administrator's decision was based.

III. Discussion

1. Unum Claims Manual[3]

When there is an adverse benefits determination with respect to a claim for disability benefits, a plan administrator is required to provide the claimant with relevant documents, defined as documents, records, or other information that were "relied upon in making the benefit determination;" were "submitted, considered, or generated in the course of making the benefit determination without regard to whether such document, record, or other information was relied upon in making the benefit determination;" "[d]emonstrate[] compliance with the administrative processes and safeguards required . . . in making the benefit determination;" or are "statement[s] of policy or guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(i)-(iv) (2017).

Although it is not clear that the Unum Claims Manual constitutes a "relevant document" within this definition in all cases, at the hearing, Unum's attorney represented that Unum routinely provides its Claims Manual to claimants' counsel. Plaintiff argues that selected

---

[3] At the hearing on Plaintiff's motion, the parties jointly submitted a paginated copy of Unum's Claims Manual as a substitute for the unpaginated version of the Claims Manual that was attached as Exhibit 2 to Plaintiff's motion. The court has entered the substituted Claims Manual on the docket as Docket Number 28. Citations to pages of the Claims Manual in this Memorandum and Order are to pages of Docket Entry 28. The page numbers of Docket Number 28 correspond to the Bates numbers appearing at the bottom of the pages of the substituted exhibit.

portions of the Claims Manual, identified below, should be added to the A.R. (Dkt. No. 26 at 1). The court addresses each proposed addition in turn.

> A. Functional Capacity and Occupational Demands; Occupational Evaluation; Frequently Asked Questions

Plaintiff seeks to supplement the A.R. with portions of the Claims Manual that address Unum's procedures for assessing a claimant's ability to perform the duties of her occupation (*id.* at 1-5). Plaintiff contends that these portions of the Claims Manual should be added to the A.R. as a basis for an argument by Plaintiff that the process by which Unum concluded that Plaintiff was capable of performing the duties of her occupation, when tested against these portions of the Claims Manual, was arbitrary and capricious because of the limited sources of information relied on by a vocational rehabilitation consultant who provided an opinion about Plaintiff's ability to perform the duties of her occupation (*id.* at 2). Unum objects to adding these portions of the Claims Manual to the A.R. on the grounds that Plaintiff has not shown that Unum relied on the Claims Manual in reviewing her claim, that any action taken by Unum was inconsistent with the Claims Manual, or that Plaintiff has identified any part of the Claims Manual that would assist in interpreting a provision or clause in the Plan documents on which Unum relied in denying her claim (Dkt. No. 18 at 3-4). Fundamentally, Unum argues, this case is not about the process by which it reached its decision, but about whether the contents of the A.R. support the plan administrator's decision under the arbitrary and capricious standard of review (*id.*).

In the court's view, there is merit to Unum's position as to the documents related to Plaintiff's functional capacity. This is not a case, such as *Glista*, in which the claimant has identified a plan definition of functional capacity that requires clarification by reference to Unum's internal documents. Plaintiff's claim of disability is based on pain and functional limitations attributable to problems with her back. Plaintiff "bore the 'burden to provide

6

evidence that [she] was unable to perform the duties of [her] occupation,' and '[a]n integral part of that evidence would be a statement of what [her] job required.'" *Tsoulas v. Liberty Life Assur. Co. of Boston*, 454 F.3d 69, 78 (1st Cir. 2006) (quoting *Wright v. R.R. Donnelly & Sons Co. Grp. Benefits Plan*, 302 F.3d 67, 77 (1st Cir. 2005)) (alterations in original). Vocational reviews conducted in connection with Plaintiff's disability claim in 2007 included the opinion that a pediatrician is required to stand and walk frequently with lifting of up to 50 pounds (Dkt. No. 16-9 at 2). The vocational rehabilitation consultant who reviewed the file in 2016 relied on Plaintiff's job description information and the Dictionary of Occupational Titles ("DOT") and the Enhanced DOT ("EDOT") to conclude that the physical demands of Plaintiff's own occupation of pediatrician required frequent sitting, occasional standing and walking, and the occasional lifting/exertion of force of up to 20 pounds (Dkt. Nos. 16-11; 16-12). The Claims Manual states that usage of the DOT physical demands and frequency descriptors provide a "starting point" for defining the physical requirements of a specific occupation because the DOT descriptors are commonly understood primarily as references that address the requirements for lifting and carrying, and sitting, standing, and walking (Dkt. No. 28 at 11-12). Plaintiff's disagreement with the 2016 vocational rehabilitation consultant opinion appears to concern the lifting and carrying and sitting and standing demands of the occupation of pediatrician. Unum's Claims Manual identifies the DOT and the EDOT as appropriate sources for determining these kinds of physical demands of an occupation (*id.* at 11). Because it was appropriate for Unum's vocational rehabilitation consultant to rely on these sources in conjunction with Plaintiff's description of the demands of her job as a basis for an opinion, Plaintiff has failed to identify "a serious claim of . . . procedural misconduct" in connection with Unum's vocational assessment that would "'overcome the strong presumption that the record on review is limited to the record

7

before the administrator.'" *Orndorf*, 404 F.3d at 520 (quoting *Liston*, 330 F.3d at 23). For these reasons, the court denies Plaintiff's request to supplement the A.R. with pages 11-12, 32-33, and 54-55 of the Claims Manual (Dkt. No. 28 at 11-12, 32-33, 54-55).

    B. Medical Information and Resources

Plaintiff raises as an issue Unum's reliance on the opinion of a non-examining physician employed by Unum and contends that the doctor who provided the opinion failed to comply with the provision in the Claims Manual that requires internal medical resources to apply "critical scientific analysis" in formulating their opinions (Dkt. No. 28 at 29). Judicial review in this case should not be focused on the interpretation of a nonspecific provision in the Claims Manual. Here, Plaintiff is simply making an argument about the sufficiency of the evidence rather than identifying possible procedural misconduct by Unum. The addition of this portion of the Claims Manual to the A.R. would not assist with the interpretation of the plan documents, nor would it support an argument of unfair process demonstrating bias against Plaintiff. As to this portion of the Claims Manual, Plaintiff has again failed to overcome the presumption that the A.R. should remain limited to the documents that were before the administrator. *See Orndorf*, 404 F.3d at 520 (quoting *Liston*, 330 F.3d at 23). Accordingly, the court denies so much of Plaintiff's motion as seeks to add pages 27-31 of the Claims Manual (Dkt. No. 28 at 27-31) to the A.R.

    C. Independent Assessments

Plaintiff seeks to supplement the A.R. with the portion of the Claims Manual that provides that "Unum has an obligation to consider all medical information, which includes giving deference to the opinion of the claimant's [attending physician(s)] when making a medical determination" (Dkt. Nos. 26 at 7; 28 at 14), arguing that Unum made only passing

reference to her attending physician's opinion that she was disabled from work (Dkt. No. 26 at 7).

> The Supreme Court has held that "[n]othing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 . . . (2003). Further, it is not "for a court to determine precisely how much weight [an insurer] should have accorded [a particular piece of evidence] in its overall decision." *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 214 (1st Cir. 2004)).

*Tsoulas*, 454 F.3d at 77 (alterations in original). Plaintiff's position that this portion of the Claims Manual should be admitted to show that Unum's decision was arbitrary and capricious "is contrary to binding precedent." *Warming v. Hartford Life & Acc. Ins. Co.*, 663 F. Supp. 2d 10, 23 (D. Me. 2009) (citing *Tsoulas*, 454 F.3d at 77) (denying the plaintiff's motion to supplement the administrative record with internal documents from the claims administrator that the plaintiff asserted would support a claim that she had been denied a full and fair review of her benefits application). For this reason, the court denies so much of Plaintiff's motion as seeks to supplement the record with page 14 of the Claims Manual (Dkt. No. 28 at 14).

    D. Evaluation of Subjective Symptoms

In the court's view, Plaintiff's final contention as to the Claims Manual stands on a different footing. Plaintiff alleges continuing disability based on subjective claims of pain and resulting functional limitations. Unum denied Plaintiff's appeal from the discontinuation of benefits in significant part because objective medical findings in the record did not appear consistent with her complaints of chronic pain (Dkt. No. 18-1 at 3-4). Unum's Claims Manual includes a section entitled "Evaluation of Subjective Symptoms" which outlines the process a disability benefits specialist should follow in making a disability determination when the primary symptoms supporting the claim are subjective (Dkt. No. 28 at 43-47). According to Plaintiff, this section of the Claims Manual "is a road map of how [Plaintiff] sustained her burden of proof

9

as to continuing disability" (Dkt. No. 26 at 8). In *Glista*, the First Circuit held that where the claimant did not seek to add new factual material to the record, "the plan administrator's own documents . . . providing the standard for evaluation of the facts presented" should be included in the administrative record. 378 F.3d at 122; *see also Tebo v. Sedgwick Claims Mgmt. Servs., Inc.*, 848 F. Supp. 2d 39, 48-49 (D. Mass. 2012) (including in the administrative record training materials that reflected the plan administrator's interpretation of its obligations under the Plan); *Cannon v. Unum Life Ins. Co. of Am.*, 219 F.R.D. 211, 214 (D. Me. 2004) (Unum's internal policies that instructed claims handlers how to handle the mental illness limitation in its policies would be relevant to the question of whether Unum acted arbitrarily and capriciously in its handling of the plaintiff's claim). Supplementing the A.R. with Unum's own documents directing claims handlers how to evaluate a disability claim that depends to a large extent on subjective claims of pain is consistent with the First Circuit's ruling in *Glista*. Accordingly, Plaintiff is entitled to supplement the A.R. with pages 43-47 of Unum's Claims Manual (Dkt. No. 28 at 43-37).

    2. <u>Quality Compliance Criteria</u>

Plaintiff contends that Unum should be required to produce its Quality Compliance Criteria ("QCC") documents and that the QCC documents should be added to the A.R. because Unum's denial of Plaintiff's individual disability claim was referred for QCC review and, as a general matter, Plaintiff's LTD and her ID claims were evaluated in tandem. In support of her argument, Plaintiff points to Unum claims notes showing that an LTD QCC employee participated in a conference call among employees from the LTD and the ID side about next steps (Dkt. Nos. 16-5; 16-6) and showing that the ID denial decision was referred for QCC review (Dkt. Nos. 16-7; 16-8). Unum opposes an order for production of its QCC documents

and the addition of QCC documents to the A.R. because Plaintiff has not shown that Plaintiff's LTD claim, the subject of this suit, was, or was required to be, subject to QCC review.

Under the terms of the governing regulations, a document, record or other information is relevant and required to be made available to a claimant when the document, record, or information was relied on in making the benefit determination, was submitted, considered, or generated in the course of making the benefit determination, or demonstrates compliance with the administrative processes and safeguards that are designed to ensure that benefit determinations are made in compliance with plan documents and consistently with respect to similarly situated claimants. *See* 29 C.F.R. § 2560-503-1(m)(8)(i)-(iii). Plaintiff has furnished clear evidence that Unum referred her claim under her individual disability policy for QCC review. She has submitted no such evidence as to her LTD claim. Thus, it does not appear that QCC documents or information were relied upon or considered in connection with the LTD benefits determination. Reliance on 29 C.F.R § 2560-503-1(m)(8)(iii) would be equally misplaced because this provision in the regulations only requires "the disclosure of 'compliance verification materials specifically generated in connection with the *particular* adverse benefit determination[.]'" *Lampron v. Grp. Life Ins. and Disability Plan of United Techs. Corp.*, No. 2:13-cv-189-GZS, 2013 WL 5936683, at *16 (D. Me. Nov. 3, 2013) (quoting *Palmiotti v. Metro. Life Ins. Co.*, No. 04CIV0718LTSJCP, 2006 WL 510387, at *3 (S.D.N.Y. Mar. 1, 2006) (emphasis in original)). Plaintiff has not shown the existence of any compliance verification materials specifically generated in connection with the discontinuation of her LTD benefits. Finally, to the extent Plaintiff intends to challenge the discontinuance of her benefits on the basis that her claim did not receive a full and fair review, she has not shown that QCC compliance was required to ensure such a review or that the failure to conduct such a review constituted a

procedural irregularity.  In summary, Plaintiff has not met her burden of showing a very good reason for supplementing the A.R. with QCC standards that Unum may apply generally in LTD cases or with additional QCC documents, if any exist, related to the denial of Plaintiff's claim under her individual disability policy.  *See Liston*, 330 F.3d at 23; *Kamerer v. Unum Life Ins. Co. of Am.*, 251 F. Supp. 3d 349, 353 (D. Mass. 2017) (to reach outside of the administrative record related to a specific decision, a claimant must have a meaningful challenge to the procedure used by the claims administrator) (citing *Orndorf*, 404 F.3d at 520); *Warming*, 663 F. Supp. 2d at 19.  For these reasons, the court denies Plaintiff's request to compel production of QCC documents, records or information, and denies the request to supplement the A.R. with such documents, records or information.

      3.   Vocational Resource Materials

In this case, the reviewing court is charged with determining whether Unum's decision to discontinue Plaintiff's LTD benefits was arbitrary and capricious based on a review of the entire record that was considered by Unum as the claims administrator.  *See Liston*, 330 F.3d at 24; *Cannon*, 219 F.R.D. at 215.  "A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record or other information . . . [w]as relied upon in making the benefit determination."  29 C.F.R. § 2650.503-1(m)(8)(i).  Thus, all documents, records and information that were relied upon by Unum's vocational rehabilitation consultants in reaching the opinion that Plaintiff was "capable of performing the duties of her occupation" (Dkt. No. 18-1 at 5) are relevant to Unum's decision.  Further, vocational resource material that was submitted, considered, or generated in the course of making the benefit determination, regardless of whether the material was relied upon as a basis for a claims decision, is also "relevant" within the meaning of the regulations.

The court agrees with Plaintiff that all vocational resource material that was relied upon or considered by Unum's vocational rehabilitation counselor in 2016 should be included in the A.R. To the extent information sources listed in the claims note authored by Richard Bayard on January 22, 2016 (Dkt. No. 16-12 at 2) are not currently part of the A.R., those materials must be added to the A.R. The opinion(s) from Unum's vocational rehabilitation counselors in July 2007 and September 2008 also should be included in the A.R. (Dkt. Nos. 16-9; 16-10; 16-11). These opinions from 2007 and 2008 were considered (and rejected) by Unum in 2016 (Dkt. No. 16-12 at 1). Because the 2016 opinion also makes reference to the informational sources that were – or were not – relied upon or considered by the vocational rehabilitation counselors in 2007 and 2008, materials that were relied upon in 2007 or 2008 also should be added to the record to the extent such materials can be accurately identified and retrieved at this time.

To the extent that Plaintiff seeks to add new vocational resource material to the A.R., a point that is not entirely clear to the court, any such request is denied. Plaintiff was informed that she could submit additional information to Unum even *after* the denial of her benefits appeal (Dkt. No. 18-1 at 8). She apparently did not do so. The A.R. (as supplemented) will include substantial evidence about the demands of Plaintiff's occupation of pediatrician, including the questionnaire she filled out and a job description for her specific position (Dkt. No. 18-2). *Contrast Orndorf*, 404 F.3d at 520 (the record could be supplemented with evidence of a claimant's job duties "if that was omitted from the administrative record"). "ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator." *Denmark*, 566 F.3d at 10. Reconfiguring that record risks distorting judicial review. *Id.* For all that appears from the pleadings, any new vocational resource material that Plaintiff proposes to add at this stage "was known to her or could have been obtained by her, prior to [Unum's]

decision on her appeal." *Warming*, 663 F. Supp. 2d at 24.  A claimant does not have "the right to supplement the record before the court to add a more detailed and/or claimant-friendly job description when both the job description of record and the proffered job information were available to her prior to plan administrators' adverse determination of her appeal." *Id.*

IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Supplement the Record is GRANTED in part and DENIED in part on the terms set forth in this Memorandum and Order.  The parties are directed to confer and file **by no later than May 4, 2018** a joint proposal setting a schedule for the filing of the supplemented administrative record and for the briefing of dispositive motion(s).  It is so ordered.

Dated:  April 23, 2018 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE